IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION


| | |
|---|---|
| PLAINTIFF A, by his natural mother and general guardian, PARENT A, Platte County, Missouri, <br><br> and <br><br> PLAINTIFF B, by his natural father and general guardian, PARENT B, Platte County, Missouri, <br><br> and <br><br> PLAINTIFF C, by his natural mother and general guardian, PARENT C, Platte County, Missouri, <br><br> and <br><br> PLAINTIFF D, by his natural father and general guardian, PARENT D, Platte County, Missouri, <br><br> Plaintiffs, <br><br> v. <br><br> PARK HILL SCHOOL DISTRICT (083-005) 7703 N.W. Barry Road Kansas City, Missouri 64153, <br><br> and <br><br> JANICE BOLIN, President and Member Park Hill School District Board of Education, <br><br> and <br><br> BART KLEIN, Vice President and Member Park Hill School District Board of Education, | Case No. 5:21-cv-6153 <br><br> JURY TRIAL DEMANDED |

and )
)
KIMBERLEY RIED, Treasurer and Member )
Park Hill School District Board of Education, )
)
and )
)
TODD FANE, Member )
Park Hill School District Board of Education, )
)
and )
)
SCOTT MONSEES, Member )
Park Hill School District Board of Education, )
)
and )
)
SUSAN NEWBURGER, Member )
Park Hill School District Board of Education, )
)
and )
)
BRANDY WOODLEY, Member )
Park Hill School District Board of Education, )
)
and )
)
DR. JEANETTE COWHERD, )
Superintendent of Schools )
Park Hill School District, )
)
and )
)
DR. JOSH COLVIN, )
Director of Student Services )
Park Hill School District, )
)
and )
)
DR. KERRIE HERREN, )
Principal, Park Hill South High School )
)
Defendants. )

2

# COMPLAINT

COME NOW Plaintiff A, Plaintiff B, Plaintiff C, and Plaintiff D, by and through their respective natural parents and general guardians, Parent A, Parent B, Parent C, and Parent D, and for their causes of action for damages, injunctive relief, and their attorney fees and expenses as provided by 42 U.S.C. § 1988 against Defendants Park Hill School District; Janice Bolin, President and Member, Park Hill School Board; Bart Klein, Vice President and Member, Park Hill School Board; Kimberley Ried, Treasurer and Member, Park Hill School Board; Todd Fane, Scott Monsees, Susan Newburger, and Brandy Woodley, Members, Park Hill School Board; Dr. Jeanette Cowherd, Superintendent of Schools, Park Hill School District; Dr. Josh Colvin, Director of Student Services, Park Hill School District; and, Dr. Kerrie Herren, Principal, Park Hill South High School, state and allege as follows:

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues raised herein.

## NATURE OF ACTION

1.  During the summer of 2021, the four minor plaintiffs were 14 years old and had just graduated from middle school and joined the ninth grade football team at their new high school, Park Hill South ("PHS").  The new team included boys of various races and ethnicities, some were biracial and others were White, Black, Asian, and Hispanic.

2.  As they attended summer football camp and school practices, Plaintiffs found themselves in a school culture that was infused with frequent casual use of racial and ethnic epithets and slurs; demeaning names were often used both in jest and in earnest; "unclean" Hip Hop music with frequent epithets and racial slurs was often played loudly in the locker

room; friendly banter about racial topics was frequent; school district adults, including coaches, only occasionally asked the ninth graders to "watch their language" but mostly condoned heavily racialized interactions among the members of the ninth grade football team.

3. This school and team culture flourished in a school district that had for decades been a virtually all-white suburban district that in recent years experienced increasing enrollments of Black and Hispanic students that had resulted in complaints of racial and ethnic discrimination. The school district had achieved only mixed success addressing the demands of students and parents for equity and equal treatment making it difficult for ninth grade students to navigate their conduct between the pulls of a peer culture that valued racialized bantering and the adult expectations of a school code that prohibited most forms of racial or ethnic descriptions and banter as punishable offenses.

4. In this context, on September 16, 2021, after school hours while on a school bus on its way to a late-afternoon away football team, Plaintiff A (who identifies as biracial Black and Brazilian) bantered with Student X (who is Black) about slavery and needing a job, which both found humorous. Plaintiff A drafted a "petition" for Change.Org entitled "Start slavery again". Before posting it, Plaintiff A showed it to Student X and others seated near them on the bus. All laughingly approved and Plaintiff A posted it on Change.Org.

5. The students who then knew about the "petition" laughed about it and encouraged Plaintiff A to share it with others on the ninth grade football team by posting a link to it on the team's SnapChat Group which had about 35 members, all of whom were on the team. Student X "liked" the "petition", "shared" it with another student, and verbally encouraged a

teammate to "sign it", all while laughing with others seated near him on the bus, just two rows from a team coach who paid no attention to the students laughing about and sharing the "petition".

6. By means not known, the Group Snapchat about the "petition" was shared outside the ninth grade football team and set off a firestorm of criticism by adults, many without any affiliation with the school district. The mounting firestorm was furthered by the school district itself when Park Hill South Principal Herren communicated to "staff and families" of the school community that a "racist petition" had been circulated. Herren did not identify the race or ethnicity of the students involved, feeding a growing public belief that racist white students had been the source of the "petition". The result was an outcry both regional and national that blamed this mostly white suburban school district for again allowing racist behavior to arise in the district.

7. Unable to resist the firestorm of criticism, the Park Hill School Board expelled Student A and disciplined Students B, C, and D, who had commented on the "petition", "by suspensions of 180 days, but took no action against Student X without whose encouragement the "petition" would never have been posted.

8. "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989). "Speech may not be banned on the ground that it expresses ideas that offend." *Matal v. Tam*, 582 U.S. ___, 137 S.Ct. 1744, 1751 (2017). And school districts may not deprive students of their right to an education for expressing unpopular thoughts of opinions without demonstrating

5

that such free speech caused a material disruption to the educational mission of the district. And, as Plaintiffs assert, they caused no disruption. All of the disruption the school district experienced was caused by others – adults with no connection to Plaintiffs.

## PARTIES

9. Plaintiff A is a student at Park Hill South High School who, during academic year 2021-22, was a ninth grader and was a member of the ninth grade football team. As of September 16, 2021, he was 15 years old, *i.e.*, a minor. Plaintiff A resides with his parents in Platte County, Missouri, and he brings this suit by his natural mother and general guardian, Parent A.[1] Plaintiff A is biracial, Black and Brazilian. He has many friends of various races and ethnicities at PHS.

10. Plaintiff B is a student at Park Hill South High School who, during academic year 2021-22, was a ninth grader and was a member of the ninth grade football team. As of September 16, 2021, he was 14 years old, *i.e.*, a minor. Plaintiff B resides with his parents in Platte County, Missouri, and he brings this suit by his natural father and general guardian, Parent B. Plaintiff B is White.

11. Plaintiff C is a student at Park Hill South High School who, during academic year 2021-22, was a ninth grader and was a member of the ninth grade football team. As of

---

[1]Fed. R. Civ. P. 17(c) provides that a general guardian may sue or defend on behalf of a minor. Courts have held that natural parents qualify as general guardians who may sue on behalf of a minor with no need for a formal court appointment. *See*, *S.E.S. v. Galena Unified School District No. 499*, No. 18-2042-DDC-GEB, 2018 WL 558059, at * 1 (D. Kan. Jan. 25, 2018) (citing *Meredith v. Dusin*, No. 03-2532-CM-DJW, 2003 WL 22844157, at *1 (D. Kan. Nov. 12, 2003) (citing *Burke v. Smith*, 252 F.3d 1260, 1264 (11th Cir. 2001); *Communities for Equity v. Mich. High Sch. Athletic Ass'n*, 26 F.Supp.2d 1001, 1006 (D. Mich. 1998); and denying motion for next friend as moot)).

6

September 16, 2021, he was 14 years old, *i.e.*, a minor.  Plaintiff C resides with his parents in

Platte County, Missouri, and he brings this suit by his natural mother and general guardian,

Parent C.  Plaintiff C is White.

12.  Plaintiff D is a student at Park Hill South High School who, during academic year

2021-22, was a ninth grader and was a member of the ninth grade football team.  As of

September 16, 2021, he was 14 years old, *i.e.*, a minor.  Plaintiff D resides with his parents in

Platte County, Missouri, and he brings this suit by his natural father and general guardian,

Parent D.  Plaintiff D is biracial, White and Asian.

13.  Defendant Park Hill School District ("PHSD" or "Park Hill" or "the District") is a

public school district located in Platte County, Missouri.  It provides education to students

from Pre-K through twelfth grade in multiple localities throughout Platte County.

14.  Defendant Janice Bolin is a member and the president of the Park Hill School

District Board of Education (variously referred to herein as "the Board").  On information

and belief, she resides in Kansas City, Platte County, Missouri.

15.  Defendant Bart Klein is a member and the vice president of the Park Hill School

Board.  On information and belief, he resides in Kansas City, Platte County, Missouri.

16.  Defendant Kimberley Ried is a member and the treasurer of the Park Hill School

Board.  On information and belief, she resides in Kansas City, Platte County, Missouri.

17.  Defendant Todd Fane is a member of the Park Hill School Board.  On

information and belief, he resides in Kansas City, Platte County, Missouri.

18.  Defendant Scott Monsees is a member of the Park Hill School Board.  On

information and belief, he resides in Kansas City, Platte County, Missouri.

7

19.  Defendant Susan Newburger is a member of the Park Hill School Board.  On information and belief, she resides in Parkville, Platte County, Missouri.

20.  Defendant Brandy Woodley is a member of the Park Hill School Board.  On information and belief, she resides in Parkville, Platte County, Missouri.

21.  Defendant Dr. Jeanette Cowherd is Superintendent of Schools for the Park Hill School District.  On information and belief, her office is located at the District Office, 7703 N.W. Barry Road, Kansas City, Missouri 64153.

22.  Defendant Dr. Josh Colvin is Director of Student Services for the Park Hill School District.  On information and belief, his office is located at the District Office,  7703 N.W. Barry Road, Kansas City, Missouri 64153.

23.  Defendant Dr. Kerrie Herren is the Principal of Park Hill South High School.  On information and belief, his office is located at Park Hill South, 4500 N.W. River Park Drive, Riverside, Missouri 64150.

## STATE ACTION

24.  The acts and omissions of all Defendants herein which give rise to Plaintiffs' claims were committed by them while acting under color of state law and the regulations, policies, procedures, practices, customs, and usages of Defendant Park Hill School District as well as pursuant to Mo. Rev. Stat. §§ 167.161 and 167.171.

## JURISDICTION AND VENUE

25.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C.§§ 1331 and 1343.

26.  The Court has jurisdiction over Defendants because the unlawful acts alleged in this Complaint were committed in Platte County, Missouri, which as provided in 28 U.S.C. §

105 (b), lies within the Western District of Missouri.

27.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events, acts, or omissions giving rise to Plaintiffs' claims occurred in Platte County, Missouri, which as provided in 28 U.S.C. § 105(b)(3), lies within the St. Joseph Division of the Western District of Missouri.

## FACTS AND GENERAL ALLEGATIONS COMMON TO ALL COUNTS

28.  When Missouri became a state in 1821, Platte County was not part of the new state.  Its indigenous and emigrant tribes were Potawatomi, Sauk, Fox, and Iowa.

29.  In 1828, Zadock Martin and his sons were the first non-indigenous people to settle in what became Platte County, with their "several" male slaves.

30.  By the 1830s, settlers from the east, mostly from Kentucky and North Carolina, and mostly with slaves, had expropriated much of the land from the indigenous tribes and sought annexation into the State of Missouri.

31.  In 1836, the Platte Purchase was approved by the United States, annexing to Missouri what are now six counties, in violation of the Missouri Compromise of 1820 that had prohibited the expansion of slavery north of Missouri's southern boundary.

32.  By the census of 1840, Platte County had just under nine thousand residents of whom 858 were slaves valued at $223,620 and consisting of 9.6% of the population but about 60% of the assessed valuation in the county.

33.  In the census of 1850, there were only 108 free Blacks in the counties of Buchanan, Platte, Clay, Jackson, Cass, and Bates.  Blacks were escaping into the Kansas Territory and showing up at the army base at Ft. Leavenworth as refugees.

9

34. During the 1850s, Platte County was a major source of pro-slavery men participating in the "Bleeding Kansas" border war in an effort to extend slavery to Kansas.

35. Free Blacks in Kansas were sometimes captured and taken to Platte County where they were "sold south", usually to brutal conditions in Louisiana or Mississippi.

36. In 1855, a mob in Parkville, Platte County, attacked the free-state newspaper, the Parkville Luminary, burning the building and throwing the printing press into the Missouri River.

37. By 1860, about half of the slave population of Platte County had fled, most likely to Kansas.

38. From its earliest days as a state, Missouri made it unlawful to teach Blacks to read or write. After the Civil War, Missouri mandated separate schools for White and Black students, but from 1866 to 1929 school districts with an enumeration of less than fifteen Black students did not have to provide them with any education at all, and the predecessor school districts of Defendant Park Hill did not.

39. And Missouri did not require school districts, such as the predecessors of the Park Hill School District to pay for the education of its Black residents when it did not provide separate schools. The predecessors of Park Hill never provided a high school for its Black students nor pay for them to attend Lincoln High School in Kansas City.

40. By the time *Brown*[2] was decided in 1954, Blacks with school age children had mostly left southern Platte County, many migrating to be near Lincoln High School, and the "integrated" Park Hill School District remained virtually all-white with an all-white teaching

---

[2]*Brown v. Board of Education*, 347 U.S. 483 (1954).

staff.

41. In 1974, Kansas City, Missouri voters adopted a ½-cent sales tax for education to be shared proportionately with all of the 13 school districts that included some of Kansas City. The Superintendent of Park Hill wrote to Kansas City to declare that the Park Hill School District "is not interested in accepting the money even if it becomes available to us" so long as there is any "indication from Kansas City that if we accept the money, we would be obligated to take students from Kansas City, Missouri schools in order to effect integration."

42. With deep roots in slavery and a decades-long resistance to racial integration, the Park Hill School District with the support of its virtually all-white population remained mired in its past with an all-white student body until years into this new century and as its Black population grew rapidly to 10.9% at present, the District struggled, and continues now to struggle, to adapt its educational mission to a diverse and changing enrollment.

43. With deep roots in anti-Black prejudices in Platte County, including in Parkville, the Park Hill School District, and all Defendants, failed to address effectively a racially-derived student culture that grew in its schools as racially diverse students enrolled in significant numbers.

44. The racially-derived student culture that thrived at Park Hill South, and was especially present among the members of the ninth grade football team, prized multi-racial social acceptance as evidenced by frequent use of racial slurs in non-hostile situations, openly playing "Not Clean" Hip Hop music in the presence of coaches and other adults, favoring clothing and other external manifestations of minority cultures, and bantering and

joking about racial topics, all without any guidance from Defendants as to how these ninth graders should navigate the boundaries between acceptable and unacceptable behavior.

45.   Defendants' historical failure to engage with the race-based culture in their schools and to provide age-appropriate guidance to entering ninth graders resulted in students having no warning that private and friendly multi-racial bantering about slavery was an offense so severe that it could result in expulsion or year-long suspensions.

46.   As alleged, *supra* at ¶¶ 9-12, Plaintiffs on September 16, 2021 were all ninth graders at Park Hill South High School and all were members of the ninth grade football team.

47.   On September 16, 2021, Plaintiffs A, B, and C were on a PHS school bus *en route* to an away game for the ninth grade football team.

48.   As alleged, *supra* at ¶ 9, Plaintiff A is biracial, Black and Brazilian.  He has many friends of various races and ethnicities at PHS.

49.   In the months while he was on the ninth grade football team, Plaintiff A had often been called the "n-word", fully pronounced and not abbreviated as used here, in situations that were both friendly and inclusive and also hostile and disparaging, usually inclusively but occasionally disparagingly.

50.   Plaintiff A had often heard racial and ethnic slurs used repeatedly at PHS in both modes, most often in friendly bantering.  This language was often used in the locker room within the hearing of coaches or other adults and was most often tolerated by those adults.  It was also not unusual for such names to be used in the hallways at the school.

51.   Plaintiffs B and C are White.  As members of the ninth grade football team, they

too had often heard at school the use of racial and ethnic epithets and slurs, often as friendly bantering but occasionally used as hostile or angry terms. They had also experienced being called names such as "cracker" and experienced such name-calling in the team locker room as well as in the halls of PHS.

52. Plaintiff D is biracial, White and Asian. He had sometimes been called and had often heard a fellow Asian student called such terms as "slant-eyes", "rice-picker", and "dog-eater" among other ethnic slurs.

53. On September 16, 2021, Plaintiff D was on a second bus with other members of the team.

54. All of the football team members on both buses were at times using their cell phones for SnapChat Groups, texting, or listening to music.

55. Plaintiff A was a member of a SnapChat Group whose members were all on the ninth grade football team. That group had about 35 members. Plaintiffs B, C, and D were also members of that group.

56. Plaintiff A and Student X, who is Black, were engaging in playful bantering about jobs and slaves, a subject first mentioned by Student X to Plaintiff A.

57. Plaintiff A had never heard of Change.Org and knew nothing about it that day until, while *en route* to the game, he saw a petition on Change.Org promoting the construction of a new football stadium for Park Hill South High School that someone had linked to on some social media platform.

58. Plaintiff A typed a three-word "petition" onto Change.Org stating, "Start slavery again". Before posting the "petition", Plaintiff A showed the screen of his phone to

13

teammates seated near him, including Student X. The teammates who were shown the screen, including Student X, all laughed about it and encouraged Plaintiff A to post it, which he did.

59. Plaintiff showed the posted "petition" on his screen to other teammates on the bus who all found it to be funny and laughed about it. One student encouraged Plaintiff A to "share" a link to the "petition" with the other teammates on the Group Chat, which he did.

60. There were no further discussions about the "petition" or comments as the team arrived for the football game, which the team won, and on the return trip there was some additional laughing about and sharing of the "petition" but no disruptions to any school function.

61. By the time the bus returned to PHS after the game, some eleven people had "Liked" the "petition". Others had shared it. Student X had liked the "petition", forwarded it to at least one other student, and verbally encouraged a student to sign it.

62. Four students had posted comments on the "petition". Plaintiff A who posted the "petition" also commented on it, referring to Student X by name and adding " . . . needs a job". Plaintiff B commented, "I love slavery". Plaintiff C posted, "I hate blacks". Plaintiff D commented, "I want a slave".

63. The posted "petition" and the four comments caused no disruptions to PHS, to the football team, or to any function of the Park Hill School District. The "petition" and its comments had resulted only in humor.

64. The "petition" was not intended literally and there is no evidence that it was intended literally. The ninth graders who posted, liked, or commented on the "petition", as

14

well as the Black, Student X, who participated in the creation and sharing of the "petition", all viewed it as a joke and those who commented on it wanted to be in on the joke.

65. On the same date as the non-disruptive "petition", the Park Hill School District was dealing with a "Devious Licks Challenge" spreading on the Tik Tok social media encouraging students to vandalize Park Hill school restrooms and post videos of that vandalism on the social media, causing some actual vandalism and resulting in closed bathrooms. No discipline is known to have been meted out by the school district to any student engaging in or encouraging this actual disruption of school functions.

66. A parent alerted by Principal Herren of PHS to the Tik Tok threat responded to Herren the next day, September 17, 2021, by email complaining about the "petition" and its four comments, taking the comments literally, but noting that even if they were part of a "joke", they were "unacceptable".

67. Also on September 17, Plaintiffs were interviewed by vice principals at PHS and all admitted their participation, characterizing it all as a joke.

68. On September 17, Plaintiffs were charged with violating school policies for cell phone use, disorderly conduct, disruptive behavior, and harassment. The students were suspended for ten days with a recommendation for long term suspension or expulsion.

69. On September 17, 2021, Defendant Herren notified by email the families of students enrolled at PHS that he had just learned that day of "some unacceptable and racist statements that some students posted online". Herren's communication did not identify any of the students involved by name or by race.

70. In response to Herren's September 17, 2021 email, multiple news reports were

published, many online, or aired, and all of them assumed that some white students had posted "racist statements". Park Hill School District administrators described the public response to the District's publication of references to the "petition" and comments as a "firestorm" critical of the District for allowing racist acts.

71. On September 22, 2021, Defendant Cowherd emailed a letter to the entire "Park Hill School District Community" referring to "unacceptable and racist statements" that had been posted online. Defendant Cowherd wrote that the school district would not tolerate "discrimination or harassment" or "attacks regarding a person's race, nationality . . .." Cowherd added that the school district was "setting up meetings" for students, families, and staff who are "hurting" as a result of the bus incident.

72. The Superintendent's publication of her letter to the entire Park Hill School District Community was a furthering of the public "firestorm" directed at the District resulting in widespread local, regional, and national publicity about a "racist petition" in the District.

73. After a hearing before the seven-member school board on November 3, 2021, Plaintiff A was expelled from the school district and Plaintiffs B, C, and D were given 180-day suspensions.

74. Student X was not charged by the Park Hill School District with participating in the development of the "petition", its circulation among team members, "liking" the "petition", or encouraging other team members to sign the "petition".

75. Defendants, while publicly and widely characterizing the "petition" as "racist", did not inform the Park Hill School District Community or the public that the "petition" had

been created by a biracial Black and Brazilian student with the encouragement of a Black student or that the "petition" and comments arose from a laughing and bantering group of multi-racial ninth graders for no purpose other than an attempt to be funny, making fun of racial stereotypes.

76. The failure of the Defendants to be candid and truthful about the "petition" fed the public "firestorm" reaction to what the Defendants themselves called a "racist" act and resulted in hundreds if not thousands of angry texts, emails, phone calls, and social media postings, many calling for some of the Defendants to resign or be discharged.

77. Defendants cancelled some classes, postponed some teacher training sessions, delayed implementation of new assessment modules, scheduled special meetings or classes, offered counselling to those "hurting", and in other ways responded to the "firestorm" of District and public reaction to the Defendants' own announcements of purportedly "racist statements" by students on the ninth grade football team.

78. The expulsion of Plaintiff A and the 180-day suspensions of Plaintiffs B, C, and D were longer and more punitive than customary student disciplinary measures imposed by Defendants for previous non-violent or non-criminal infractions of school policies.

79. The expulsion and long suspensions denied and are denying Plaintiffs access to educational opportunities and services to which they have property rights and rights under the Missouri State Constitution.

80. The expulsion and long term suspensions imposed on Plaintiffs were imposed for purposes unrelated to the need of Defendants to maintain good order and a functioning educational environment in Park Hill schools, but were instead imposed for the personal or

political needs of Defendants to appear publicly to impose harsh punishment on students who had purportedly circulated "racist statements".

**COUNT I**
**FIRST AMENDMENT VIOLATION**
**42 U.S.C. § 1983**
**All Plaintiffs Against All Defendants**

81. Plaintiffs hereby incorporate by reference paragraphs 1 through 80 as if fully set forth here.

82. Plaintiffs' writing, typing, posting, and sharing words on social media are all expressions of speech protected by the First Amendment to the United States Constitution.

83. Plaintiffs' speech expressions were not intended literally, and no reasonable person understood them literally. The speech expressions were not intended as meaningless or nonsensical assemblies of words, and no reasonable person understood them to be meaningless. As non-literal expressions conveying some meaning, the speech was intended as expressions of humor.

84. Plaintiffs' expressions of humor arose from friendly banter among a group of multi-racial friends on their football team and were intended only for members of that team who were linked by a team SnapChat group.

85. Plaintiffs' expressions of humor were not intended to cause and did not cause any disruption to educational or sports activities of Defendants.

86. Any disruptions of the educational mission of Defendants was caused by others than Plaintiffs including by Defendants themselves, adults in the Park Hill School District Community, adults outside the Park Hill School District Community and seeking either publicity for themselves or desiring to cause disruption within the District.

18

87.  That the disruptions to the educational mission of Defendants was caused by others than Plaintiffs was not foreseeable by Plaintiffs.

88.  Defendants acted under color of Missouri state law, Mo. Rev. Stat. §§ 167.161 and 167.171, in expelling Plaintiff A and imposing 180-day suspensions on Plaintiffs B, C, and D.

89.  As a direct result of the acts of Defendants, Plaintiffs sustained and continue to sustain damages in that they suffered and continue to suffer adverse consequences educationally and socially and have experienced and continue to experience mental anguish, embarrassment, and humiliation.

90.  Plaintiffs are entitled to a temporary or preliminary injunction permitting them to return to school and ordering Defendants to assist Plaintiffs in making up for the educational opportunities they have missed; and Plaintiffs are entitled to a judgment on the merits of their claim and a permanent injunction ordering Defendants to expunge their school records as to this school bus incident and prohibiting further violations of the First Amendment rights of Plaintiffs.

91.  The actions of Defendants Bolin, Klein, Ried, Fane, Monsees, Newburger, Woodley, Cowherd, Colvin, and Herren in expelling and/or suspending Plaintiffs were driven by an evil motive or intent, or were willful, wanton, reckless and malicious, and further, show a complete and deliberate indifference to, and conscious disregard for the constitutional and legal rights of Plaintiffs A, B, C, and D.  Therefore, Plaintiffs are entitled to an award of punitive or exemplary damages in an amount sufficient to punish these Defendants or to deter these Defendants and others similarly situated from like conduct in the future.

92.  Plaintiffs are entitled to recover from Defendants their reasonable attorneys' fees and expenses, as provided for by 42 U.S.C. § 1988.

**COUNT II**
**FOURTEENTH AMENDMENT DUE PROCESS VIOLATION**
**42 U.S.C. § 1983**
**All Plaintiffs Against All Defendants**

93.  Plaintiffs hereby incorporate by reference paragraphs 1 through 92 as if fully set forth here.

94.  Plaintiffs have constitutional and property right interests, were deprived of those protected interests within the meaning of the Due Process Clause, and they were not afforded adequate procedural rights prior to that deprivations all as more fully described, *infra* at ¶¶ 95 - 100.

95.  Education is a fundamental right and Plaintiffs have a constitutional and property right to a free public education.  *Goss v. Lopez*, 419 U.S. 565, 574 (1975); MO. CONST. art. 9, § 1(a).

96.  Due process requires at a minimum that before being deprived of the fundamental right to an education, Plaintiffs are entitled to fair notice as to what conduct is proscribed, fair notice as to the substance of charges alleging violations of the prohibition on such proscribed conduct, a fair opportunity to defend against specific charges of such violations, and a process and punishments that are not arbitrary or capricious.  Defendants violated these fundamental due process rights of Plaintiffs.

97.  Plaintiffs' expressions of humor neither consisted of disorderly conduct nor caused disorderly conduct by any person.  Their expressions of humor did not result in any person being harassed nor cause any student or other person to be harassed.  And the

20

Plaintiffs did not cause any disruption to any school function.

98. Charging and severely disciplining Plaintiffs for disorderly conduct that caused no disorder, was not violent, and resulted in no physical injuries for harassment that resulted in the harassment of no one, and disruptive behavior that disrupted nothing arose either from the application of vague or overly broad school policies or were arbitrary and capricious applications of those policies, thereby depriving Plaintiffs of Due Process.

99. Defendants charged and severely disciplined Plaintiffs for using cell phones only because Plaintiffs had used their phones to make protected expressions disfavored by Defendants while not charging and disciplining others on the team bus when the entire football team used cell phones, resulting in an arbitrary and capricious enforcement of a district policy.

100. Defendants violated the clearly established rights of Plaintiffs not to be disciplined pursuant to inapplicable or vague school district policies and thereby violated their Due Process rights.

101. As a direct result of the acts of Defendants, Plaintiffs sustained and continue to sustain damages in that they suffered and continue to suffer adverse consequences educationally and socially and have experienced and continue to experience mental anguish, embarrassment, and humiliation.

102. Plaintiffs are entitled to a temporary or preliminary injunction permitting them to return to school and ordering Defendants to assist Plaintiffs in making up for the educational opportunities they have missed; and Plaintiffs are entitled to a judgment on the merits of their claim and a permanent injunction ordering Defendants to expunge their school

21

records as to this school bus incident and prohibiting further violations of the Due Process rights of Plaintiffs.

103.  The actions of Defendants Bolin, Klein, Ried, Fane, Monsees, Newburger, Woodley, Cowherd, Colvin, and Herren in expelling and/or suspending Plaintiffs were driven by an evil motive or intent, or were willful, wanton, reckless and malicious, and further, show a complete and deliberate indifference to, and conscious disregard for the constitutional and legal rights of Plaintiffs A, B, C, and D.  Therefore, Plaintiffs are entitled to an award of punitive or exemplary damages in an amount sufficient to punish these Defendants or to deter these Defendants and others similarly situated from like conduct in the future.

104.  Plaintiffs are entitled to recover from Defendants their reasonable attorneys' fees and expenses, as provided for by 42 U.S.C. § 1988.

## COUNT III
### FOURTEENTH AMENDMENT EQUAL PROTECTION VIOLATION
### 42 U.S.C. § 1983
### Plaintiffs B, C, and D Against All Defendants

105.  Plaintiffs hereby incorporate by reference paragraphs 1 through 104 as if fully set forth here.

106.  As more fully described, *infra* at ¶¶ 107 - 109, Plaintiffs B, C, and D, were singled out and treated differently with regard to the punishment they were given than the similarly situated Student X and the Defendants' action in imposing discriminatory punishment on Plaintiffs B, C, and D was based upon impermissible purposes including race and the exercise of a recognized fundamental right.

107.  Student X, who is Black, participated in and contributed to the creation, circulation, and signing of the "petition" in ways more substantive than Plaintiffs B, C, and

22

D.

108.  Defendants did not charge or discipline Student X for his participation in and contribution to the creation, circulation, and signing of the "petition" because to charge and discipline a Black student would have undercut or contradicted the assertion of Defendants that the "petition" was a "racist statement".

109.  The charging of Plaintiffs B, C, and D with violations of school policies and disciplining them for alleged violations of those policies while not charging and disciplining Student X was on account of the race or ethnicities of Plaintiffs B, C, and D, thereby violating the right of Plaintiffs B, C, and D to the Equal Protection of the law.

110.  As a direct result of the acts of Defendants, Plaintiffs B, C, and D sustained and continue to sustain damages in that they suffered and continue to suffer adverse consequences educationally and socially and have experienced and continue to experience mental anguish, embarrassment, and humiliation.

111.  Plaintiffs B, C, and D are entitled to a temporary or preliminary injunction permitting them to return to school and ordering Defendants to assist Plaintiffs B, C, and D in making up for the educational opportunities they have missed; and Plaintiffs B, C, and D are entitled to a judgment on the merits of their claim and a permanent injunction ordering Defendants to expunge their school records as to this school bus incident and prohibiting further violations of the Equal Protection rights of Plaintiffs B, C, and D.

112.  The actions of Defendants Bolin, Klein, Ried, Fane, Monsees, Newburger, Woodley, Cowherd, Colvin, and Herren in suspending Plaintiffs B, C, and D, were driven by an evil motive or intent, or were willful, wanton, reckless and malicious, and further, show a

23

complete and deliberate indifference to, and conscious disregard for the constitutional and legal rights of Plaintiffs B, C, and D. Therefore, Plaintiffs B, C, and D are entitled to an award of punitive or exemplary damages in an amount sufficient to punish these Defendants or to deter these Defendants and others similarly situated from like conduct in the future.

113. Plaintiffs B, C, and D are entitled to recover from Defendants their reasonable attorneys' fees and expenses, as provided for by 42 U.S.C. § 1988.

**COUNT IV**
**FAILURE TO TRAIN AND SUPERVISE/INADEQUATE TRAINING AND SUPERVISION**
**42 U.S.C. § 1983**
**All Plaintiffs Against All Defendants**

114. Plaintiffs hereby incorporate by reference paragraphs 1 through 113 as if fully set forth here.

115. Defendants Park Hill School District, Bolin, Klein, Ried, Fane, Monsees, Newburger, Woodley, Cowherd, Colvin, and Herren had the authority and the duty to train, supervise, discipline, and otherwise control themselves and other employees of the District.

116. Defendants had a duty to exercise reasonable care to train and supervise themselves and other employees of the District and to provide reasonable training and supervision to prevent the expulsion and/or suspension of Plaintiffs in violation of their constitutional rights to freedom of speech under the First Amendment and to Due Process and Equal Protection under the Fourteenth Amendment.

117. Defendants failed to train and supervise themselves and other employees of the District in a manner that reasonable school districts, school board members, and school administrators would have under the circumstances.

118. The failure of Defendants to provide reasonable and adequate training and

supervision to prevent themselves and other employees of the District from unlawfully expelling and/or suspending Plaintiffs in violation of their constitutional rights to freedom of speech under the First Amendment and to Due Process and Equal Protection under the Fourteenth Amendment amounts to a custom and demonstrated deliberate indifference to or tacit authorization of Defendants' expulsion and/or suspension of Plaintiffs.

119.  The failure of Defendants to provide reasonable and adequate training and supervision to themselves and other employees of the District proximately caused injury to Plaintiffs.

120.  Plaintiffs have been damaged by Defendants' failure to train and supervise or inadequate training and supervision in that as a direct result of the acts of Defendants, Plaintiffs sustained and continue to sustain damages because they suffered and continue to suffer adverse consequences educationally and socially and have experienced and continue to experience mental anguish, embarrassment, and humiliation.

121.  Plaintiffs are entitled to a temporary or preliminary injunction permitting them to return to school and ordering Defendants to assist Plaintiffs in making up for the educational opportunities they have missed; and Plaintiffs are entitled to a judgment on the merits of their claim and a permanent injunction ordering Defendants to expunge their school records as to this school bus incident and prohibiting further violations of the constitutional rights of Plaintiffs.

122.  The failure of Defendants Bolin, Klein, Ried, Fane, Monsees, Newburger, Woodley, Cowherd, Colvin, and Herren to provide adequate training and supervision to themselves and other employees of the District which resulted in the expulsion and

suspension of Plaintiffs, was driven by an evil motive or intent, or was willful, wanton, reckless and malicious, and further, shows a complete and deliberate indifference to, and conscious disregard for the constitutional and legal rights of Plaintiffs. Therefore, Plaintiffs are entitled to an award of punitive or exemplary damages in an amount sufficient to punish these Defendants or to deter these Defendants and others similarly situated from like conduct in the future.

123. Plaintiffs are entitled to recover from Defendants their reasonable attorneys' fees and expenses, as provided for by 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court, after a trial by jury of his claims,

(a) enter judgment against Defendants for their actual damages, nominal damages, and as against Defendants Bolin, Klein, Ried, Fane, Monsees, Newburger, Woodley, Cowherd, Colvin, and Herren, punitive or exemplary damages as are proven at trial;

(b) enter a temporary or preliminary injunction permitting Plaintiffs to return to school and ordering Defendants to assist Plaintiffs in making up for the educational opportunities they have missed; and,

(c) enter judgment on the merits of their claim in Plaintiffs' favor and issue a permanent injunction ordering Defendants to expunge their school records as to this school bus incident and prohibiting further violations of the constitutional rights of Plaintiffs;

(d) enter judgment in favor of Plaintiffs for their attorney fees and expenses

26

pursuant to 42 U.S.C. § 1988, for their costs herein, and for any such further legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

LAW OFFICE OF ARTHUR A. BENSON II

By  s/ Arthur A. Benson II

By  s/ Jamie Kathryn Lansford
Arthur A. Benson II #21107
Jamie Kathryn Lansford #31133
4006 Central Avenue
Kansas City, Missouri 64111
(816) 531-6565
(816) 531-6688 (telefacsimile)
abenson@bensonlaw.com
jlansford@bensonlaw.com

Attorneys for Plaintiffs A, B, C, and D

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Complaint was served on the below-identified counsel for the Park Hill School District, its named employee-defendants and the defendant members of the Park Hill School Board via electronic mail this  12th  day of November, 2021.

Clay Fulghum, In-House General Counsel
Park Hill School District Office
7703 N.W. Barry Road
Kansas City, Missouri  64153
(816) 359-4000
(816) 350-4049 (telefacsimile)
Fulghumc@parkhill.k12.mo.us

27

and

Joseph Hatley
Spencer Fane
1000 Walnut Street
Suite 1400
Kansas City, Missouri  64106
(816) 292-8392
(816) 474-3216 (telefacsimile)

 s/ Jamie Kathryn Lansford
Attorney for Plaintiffs A, B, C, and D